PALOU, DEMANDANTE Y APELADO, *v.* RÍOS, DEMANDADA Y
APELANTE.

APELACIÓN procedente de la Corte de Distrito de Humacao en causa sobre indemnización por injuria y calumnia.

No. 1362.—Resuelto en enero 20, 1916.

LIBELO Y CALUMNIA—DAÑOS Y PERJUICIOS—ALCANCE DE LA SECCIÓN 5ª. DE LA
LEY DE 18 DE FEBRERO DE 1902.—La sección 5ª. de la ley para autorizar pleitos civiles por daños y perjuicios ocasionados por libelo y calumnia aprobada en 18 de febrero de 1902, tiene aplicación cuando la comunicación calumniosa o el escrito libeloso referente a determinada persona se dirige a otra con la cual el autor se encuentra en cualesquiera de las relaciones especificadas, pero no cuando la imputación se hace directamente de palabra o por escrito a la persona agraviada.

ID.—LADRÓN—INTENCIÓN—DELITO PÚBLICO—CAUSA DE ACCIÓN.—El llamar simplemente ''ladrón'' a una persona, es calumnioso, pues imputa la comisión de un delito grave, pero cuando aparece, como en el presente caso, que la palabra fué usada como un mero término abusivo en un momento de excitación, y que en realidad de verdad no envolvía la imputación de un delito contra la propiedad, no puede servir de base para una acción de daños y perjuicios por calumnia.

Los hechos están expresados en la opinión.

Abogados del apelante: *Sres. Francisco González y Arturo Aponte, Jr.*

Abogado del apelado: *Sr. Rafael López Landrón.*

EL JUEZ ASOCIADO SR. DEL TORO, emitió la opinión del tribunal.

El presente es un caso de indemnización por injuria y calumnia. En la demanda se alegó, en resumen, que la demandada, en presencia de diversas personas que las escucharon, pronunció las siguientes palabras refiriéndose al demandante: "¿Es usted Juan Palou? Usted es un sinvergüenza, pillo y ladrón." Y que tales palabras fueron pronunciadas con la maliciosa intención de imputar al demandante actos deshonrosos e inmorales y hechos constitutivos de delito. El demandante solicitó sentencia por la suma de $5,500. La demandada alegó que la demanda no aducía hechos suficientes para determinar la acción ejercitada. Su excepción fué declarada sin lugar y entonces contestó la demanda negando todas y cada una de sus alegaciones y sosteniendo, además, que la demandada fué provocada por el demandante quien se negaba a pagarle cierta suma de dinero que le adeudaba, sosteniéndose entre ambos una acalorada disputa y estando la demandada poseída en aquel momento de cólera y pasión por los hechos que realizaba el demandante.

Celebrada la vista, el juez, apreciando la evidencia ofrecida por ambas partes, declaró probados los siguientes hechos:

"Que allá para uno de los primeros días del mes de enero del año 1913, siendo como de dos a tres de la tarde, y estando el Sr. Juan Palou y Tomás en compañía de otras personas en un sitio de Juncos, conocido por el nombre de Lirios, se presentó en un automóvil María Ríos, viuda de Rubio, y, dirigiéndose al demandante, le dijo las siguientes palabras: 'Vd. es un sinvergüenza, un pillo y un ladrón'; que tales palabras pronunciadas en actitud colérica fueron oídas por Antonio Dávila y Ramón Ruibal, vecinos de Juncos, que a la sazón se encontraban en compañía del demandante; que tales conceptos fueron emitidos por la demandada sin que mediara por parte del demandante provocación ni agravio alguno hacia la demandada; que el demandante pasa de sesenta y cinco años y es un miembro respetable de la comunidad en que vive; que el demandante en la fecha

en que los hechos aquí expresados tuvieron lugar, pertenecía a una sociedad a la cual la demandada había arrendado cierta propiedad inmueble; que en la fecha de referencia la sociedad de que formaba parte el demandante era deudora a la demandada de ciertos cánones del arrendamiento mencionado; que la demandada exigía del demandante el pago de dichos cánones de arrendamiento al tiempo de proferir los conceptos insultantes que dirigiera al demandante.''

Luego dictó su sentencia declarando con lugar la demanda y condenando a la demandada a pagar al demandante la suma de un dollar en concepto de daños nominales y las costas y honorarios de abogado que la corte fijó en la suma de trescientos pesos. Contra esa sentencia se interpuso el presente recurso de apelación, señalándose la comisión de dos errores, a saber:

''1. Que la Corte de Distrito de Humacao cometió error al declarar que la palabra 'ladrón' en la forma en que fué proferida en este caso es libelosa *per se.*

''2. Que la corte cometió error al dictar sentencia contra la demandada, condenándole a pagar una suma de dinero y trescientos dollars por honorarios de abogados.''

La parte apelante reconoce que llamar a una persona ''ladrón,'' sin dar explicación alguna, constituye la imputación de un delito y es por consiguiente accionable *per se,* pero sostiene que las pruebas demostraron en este caso que entre demandante y demandado existían las relaciones de arrendador y arrendatario y que, por tanto, de acuerdo con lo preceptuado en la sección 5 de la ley para autorizar pleitos civiles por daños y perjuicios ocasionados por libelo y calumnia, aprobada el 18 de febrero de 1902, no podía presumirse la malicia. El precepto legal invocado es como sigue:

''Se presumirá que existe malicia en cualquier comunicación o escrito infamatorio o calumnioso que se dirija a otra persona que no sea un pariente dentro del tercer grado, o a una persona a quien el autor tenga bajo su tutela, o cuando dicha comunicación se cruce entre personas que tengan negocios en sociedad, u otra asociación semejante.''

El juez de distrito tuvo en cuenta en su opinión la alegación del demandante y decidió, con razón a nuestro juicio, que el precepto que se cita tiene aplicación cuando la comunicación calumniosa o el escrito libeloso referente a determinada persona se dirigen a otra con la cual el autor se encuentra en cualquiera de las relaciones especificadas, pero no cuando la imputación se hace directamente de palabra o por escrito a la persona agraviada.

Cita la parte apelante el caso de *Jiménez* v. *Díaz Caneja,* 14 D. P. R. 9. Lo hemos examinado detenidamente y a nuestro juicio no sostiene la contención de la apelante y está conforme con la teoría de la corte sentenciadora. Jiménez demandó a Díaz Caneja por libelo contenido en dos cartas dirigidas a Bartolomé Borrás. Entre Caneja y Borrás existían relaciones semejantes a las que median entre socios. Se resolvió que aunque la palabra ladrón escrita en las cartas era libelosa *per se,* como las cartas habían sido dirigidas por el demandado a Borrás con quien tenía las relaciones a que se ha hecho referencia, era aplicable la sección 5 de la ley de 1902 arriba citada y no existía en tal virtud la presunción de malicia.

Ahora bien; de acuerdo con la ley y la jurisprudencia, no siempre que se llama ''ladrón'' a una persona se comete el delito de calumnia, y a nuestro juicio, después de un estudio cuidadoso de la prueba practicada y de los mismos hechos declarados probados por el juez sentenciador, no es posible concluir que la intención manifiesta de la demandada en este pleito fuera la de imputar al demandante un verdadero delito de hurto o robo. La demandada cobró en forma incorrecta y abusiva en verdad una deuda al demandante. Este reconoció la existencia de la deuda, pero alegó que no era él sino una sociedad de la que formaba parte la que debía el dinero reclamado por la demandada. Todos los que oyeron a la demandada pudieron comprender perfectamente que se trataba de un asunto de negocios, en el que una mujer, la demandada, parte en el mismo, en un momento de calor o de

ira, fué más allá de lo que las buenas formas y el propio respeto exigen de consuno, pero no de la fría y consciente imputación de un delito.

La jurisprudencia sobre la materia es abundante y clara. A continuación citamos dos casos que sostienen claramente la conclusión a que hemos llegado con respecto al verdadero alcance que deba darse a las palabras pronunciadas por la demandada María Ríos, viuda de Rubio.

En el primero de ellos, o sea en el de *Fawsett* v. *Clark,* 30 Am. Rep. 481, 485, la Corte Suprema de Maryland, se expresó así:

"Las palabras contenidas en los diferentes cargos, tanto aquellas que son denunciables *per se,* como las que no lo son, se alega que fueron pronunciadas en segunda persona y dirigidas al mismo demandante.

"La prueba del demandante al declarar en su propia defensa es que estas palabras formaban parte de una violenta protesta verbal que hizo el acusado acerca de la conducta del demandante, al escribir una carta a una tercera persona, relacionada con las transacciones que con él tuvo el acusado. Haciendo referencia a la carta y a su contenido el acusado dijo que el demandante era 'un mentiroso,' 'un estafador' y que 'no era más que un ladrón';—un ladrón—que el demandante 'lo había demandado' y él había ofrecido pagar más de lo que yo (el demandante) jamás obtendría—'y que lo que en substancia dijo Fawsett con relación a la carta, fué que yo (el demandante) lo había acusado en ella de hacer falsas cuentas.'

"Todos los testigos corroboran este parecer. Las circunstancias demuestran que los términos de reproche usados no constituían sino una simple ofensa producida por el coraje; las palabras 'mentiroso,' 'ladrón,' 'estafador,' fueron pronunciadas inmediatamente una tras otra con referencia al contenido de la carta y explican a todos los que las oyeron el sentido en que fueron usadas.

"En una acción sobre calumnia por palabras algunas de las cuales de ser pronunciadas y entendidas en su sentido ordinario ciertamente que sería motivo de denuncia, el jurado debe considerar, apreciando toda la conversación en conjunto, si las palabras precisas están de tal modo calificadas por las otras partes de la conversación que demuestren que no fué su objeto expresar la idea que se les daría teniendo en cuenta su sentido principal y corriente."

Y en el segundo, o sea en el de *Bridgman* v. *Armer*, 57 Mo. App. Rep. 528, 531, la Corte de Apelación de Kansas City, Mo., dijo:

"Se negaron al acusado las instrucciones para informar al jurado en substancia de que si bien pronunció en relación con el denunciante las palabras: 'Vd. no es más que un vil ladrón' o 'V. es un simple y ruin ladrón hijo de perra,' sin embargo, si el jurado estimaba en vista de la prueba aducida que las palabras fueron meramente usadas como términos abusivos y reprochables y en ellas no había la intención de expresar la verdad siendo interpretadas por los que las escuchaban como meras frases abusivas y no como que con ellas se pretendía imputar en realidad el hecho de ser el denunciante un ladrón, entonces el jurado debía emitir un veredicto a favor del acusado. En nuestra opinión debió haberse dado esa instrucción. Una persona puede calumniar a otra con palabras que no llevan consigo según su faz una imputación calumniosa *per se,* pero se permite probar por las circunstancias que concurren en el hecho que esa fué, sin embargo, la intención. Por otra parte, una persona puede usar palabras que por sí y no estando explicadas serían calumniosas *per se,* pero si los hechos y circunstancias que aparecen de la prueba demuestran que no fué el objeto hacer semejante cargo y que no fueron interpretadas de tal modo por los que las oyeron, entonces no constituyen calumnia. Cuando se demuestra que tales palabras fueron pronunciadas, esto constituye *prima facie* una demostración de que el objeto de ellas era hacer la imputación que de las mismas se deduce y si se trata de darles alguna otra significación, debe establecerlo el acusado a menos que aparezca de la misma exposición de los hechos por parte del denunciante. 'El simplemente llamar ladrón a un hombre es punible, pues imputa un delito grave; pero si aparece que la palabra fué usada como un mero término abusivo y que en realidad ella no envolvía una verdadera imputación de robo, no hay causa de acción. Por consiguiente, al decir el acusado con respecto al denunciante que 'él es un maldito ladrón y lo mismo lo era el padre antes que él' y aparecer luego que las palabras fueron pronunciadas en momentos de coraje y en el curso de la conversación referente al hecho de haberse negado el demandante a devolver cierta suma de dinero que había recibido como albacea, Lord Ellenborough ordenó el sobreseimiento de la causa, por el fundamento de que aparecía claro de toda la conversación que las palabras, según fueron

usadas, no imputaban un delito grave.'    2 Addison, Torts, Art. 1119; Véase también a Cooley on Torts, 2, 199.''

No apareciendo, pues, que se imputara por la demandada al demandante la comisión de un delito público, cae por su base la acción por el mismo ejercitada.

En tal virtud, debe declararse con lugar el recurso, revocarse la sentencia apelada, y desestimarse la demanda sin especial condenación de costas.

> *Revocada la sentencia apelada y desestimada la demanda establecida sin especial condenación de costas.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf, Aldrey y Hutchison.