EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* ORLANDO PARGAS, acusado y apelante.

Núms. 11993, 11994, 11995 y 11996.—*Sometidos:* Noviembre 3, 1947. *Resueltos:* Diciembre 3, 1947.

---

*Celestino Iriarte, F. Fernández Cuyar, H. González Blanes y Eduardo Ortiz Reyes,* abogados del apelante; *Hon. Procurador General Luis Negrón Fernández y Joaquín Correa Suárez, Fiscal Auxiliar del Tribunal Supremo,* abogados de El Pueblo, apelados.

EL JUEZ ASOCIADO SEÑOR DE JESÚS emitió la opinión del tribunal.

El apelante fué sentenciado por la corte *a quo* por cuatro delitos de injuria y calumnia. A los efectos del juicio, los casos fueron consolidados y el mismo método se ha seguido ante este Tribunal.

El apelante impugnó, en el acto del juicio, la suficiencia de las denuncias por no exponer un delito público.

■■ En los casos números 11,993 y 11,996 el perjudicado fué el Gobernador Rexford G. Tugwell y en los 11,994 y 11,995 lo fué el Dr. Rafael Arrillaga Torréns. Consideremos, en primer término, los casos números 11,993 y 11,996. Estos se refieren a manifestaciones vertidas públicamente por el apelante en dos mítines políticos celebrados en Barceloneta el 18 de octubre y en Manatí el 21 de septiembre de 1944, respectivamente. En el primero las palabras en cuestión fueron:

"El Gobernador Tugwell es un bandolero, un bandido, un pillo, porque mientras tiene ocho automóviles a su disposición con gastos pagos por el Tesoro Insular y gasta y despilfarra $30,000 al año, el pueblo se muere de hambre."

En el segundo caso las palabras que se alegan calumniosas fueron las siguientes:

"Desgraciado y bandolero gobernador que tenemos."

Las secciones 1, 2 y 3 de la Ley núm. 49 Para Definir y Castigar el Delito de Calumnia e Injuria, aprobada el 9 de marzo de 1911 (pág. 172), prescriben:

"Sección 1.—Se entiende por calumnia toda falsa y maliciosa imputación hecha de palabra y públicamente contra otra persona natural o jurídica, imputándole la comisión de hecho constitutivo de delito.

"Sección 2.—Entiéndese también por calumnia todo *relato* (texto español: *palabra*) (texto inglés: *tale*) o informe (texto español: *concepto*) (texto inglés: *report*) proferido maliciosa y públicamente en deshonra, descrédito, menosprecio de otra persona natural o jurídica. (Bastardillas nuestras.) (Materia en paréntesis nuestra.)

"Sección 3.—Se presumirá maliciosa y será calumnia procesable toda expresión calumniosa hecha públicamente en presencia o en ausencia de la persona agraviada."

Como se dijo en el caso de *Pueblo* v. *García*, 21 D.P.R. 163, la expresión que se alega calumniosa debe estar comprendida en las secciones 1 ó 2 de la Ley, pues de otro modo

no constituirán el delito de injuria y calumnia. Examinemos los dos casos a la luz de este principio.

Decir que el Gobernador Tugwell (caso núm. 11,993) es "un bandolero, un bandido, un pillo", estando calificadas esas palabras con la frase "porque mientras tiene ocho automóviles a su disposición con gastos pagos por el Tesoro Insular y gasta y despilfarra $30,000 al año, el pueblo se muere de hambre", no imputa delito alguno. Cualquier persona que oiga esa manifestación inmediatamente advertirá que se llama "bandolero, bandido y pillo" al Gobernador, no porque haya cometido un delito de hurto u otro cualquiera, sino porque no ha cumplido fielmente con los deberes de su cargo. En el caso de *Palou* v. *Ríos*, 23 D.P.R. 363, citando con aprobación el de *Fawsett* v. *Clark*, 30 Am. Rep. 481, se dijo lo siguiente:

"En una acción sobre calumnia por palabras algunas de las cuales de ser pronunciadas y entendidas en su sentido ordinario ciertamente que sería motivo de denuncia, el jurado debe considerar, apreciando toda la conversación en conjunto, *si las palabras precisas están de tal modo calificadas por las otras partes de la conversación que demuestren que no fué su objeto expresar la idea que se les daría teniendo en cuenta su sentido principal y corriente.*" (Bastardillas nuestras.)

Y más adelante, citando con aprobación del caso de *Bridgman* v. *Armer*, 57 Mo. App. Rep. 528, se dijo lo siguiente:

" 'El simplemente llamar ladrón a un hombre es punible, pues imputa un delito grave; pero si aparece que la palabra fué usada como un mero término abusivo y que en realidad ella no envolvía una verdadera imputación de robo, no hay causa de acción. Por consiguiente, al decir el acusado con respecto al denunciante que "él es un maldito ladrón y lo mismo lo era el padre antes que él" y aparecer luego que las palabras fueron pronunciadas en momentos de coraje y en el curso de la conversación referente al hecho de haberse negado el demandante a devolver cierta suma de dinero que había recibido como albacea, Lord Ellenborough ordenó el sobreseimiento de la causa, por el fundamento de que aparecía claro de toda la conversación que las palabras, según fueron usadas, no imputaban un delito grave. (*Citas*)' ".

Y en la conocida obra de Martin. L. Newell, titulada *The Law of Slander and Libel,* (3ra. ed. 1914) pág. 348, se ilustra este principio citando de un caso inglés en el cual las palabras vertidas fueron: "Tu eres un ladrón porque te apoderaste de mis bestias por medio de una ejecución y yo te ahorcaré." Se resolvió en aquel caso que dichas palabras no imputaban el delito de hurto. Tampoco están comprendidas dichas frases en la sección 2 de nuestra Ley. Las frases en cuestión, aunque de muy mal gusto, y más perjudiciales para el que las vierte que para la persona contra quien van dirigidas, no dejan de ser una crítica en lenguaje grosero a un funcionario público en relación con el cumplimiento de sus deberes. A este efecto se dijo en el caso de *Pueblo* v. *García,* supra, citando con aprobación del caso de *Sillars* v. *Collier,* 6 L.R.A. 680:

" ' . . . Es, una de las infelicidades de la vida pública que un funcionario público tenga por tal motivo que estar sujeto a la crítica y a menudo a injustos comentarios; pero a menos que éstos se excedan de los límites fijados por la ley deberán ser tolerados en defensa del mantenimiento de la libertad de la palabra . . .

" 'Pero cuando las palabras vertidas vienen a ser simplemente la opinión del que las profiere, por duro que haya sido el lenguaje en ellas expresado con respecto al carácter del funcionario público se ha resuelto que no pueden establecerse acciones contra las mismas. (Citas).' "

■ El caso núm. 11,996 requiere menos consideración. Como hemos indicado, las palabras que se alegan calumniosas fueron:

"Desgraciado y bandolero gobernador que tenemos."

La palabra "desgraciado" no imputa un delito público. La palabra "bandolero", si bien técnicamente significa "ladrón, salteador de caminos", en el lenguaje corriente en Puerto Rico tiene, además, otra acepción, la de persona que realiza o es capaz de realizar malas acciones. No tenemos duda de que las palabras "desgraciado y bandolero", en la forma dichas, son insultantes y abusivas, pero no imputan la

comisión de un delito público tomando en consideración las circunstancias en que fueron vertidas, ni tampoco constituyen el relato o informe a que se refiere la sección 2.

Erró, a nuestro juicio, la corte inferior al no declarar con lugar la excepción perentoria contra las denuncias en los casos números 11,993 y 11,996.

██ Consideremos ahora los casos relacionados con el Dr. Rafael Arrillaga Torréns, que son los números 11,994 y 11,995. El primero de éstos se refiere a manifestaciones hechas por el apelante en un mitin político celebrado en Manatí el 21 de septiembre de 1944 y el segundo a manifestaciones vertidas en otro mitin que tuvo lugar en Barceloneta, el 18 de octubre siguiente.

En el caso núm. 11,994 las palabras en cuestión son las siguientes:

"El Dr. Rafael Arrillaga Torréns, que fué llevado a la Cámara de Representantes por la masa del Partido Socialista, traicionó a su Partido. Traidor indecente Arrillaga Torréns."

Estas palabras no imputan un delito. El delito de traición se comete contra la patria. La traición a que se refiere el párrafo transcrito, se relaciona con el Partido Socialista. Eliminado ese delito la palabra "traición" sólo imputa quebrantar la fidelidad y lealtad que se debe guardar o tener.

Tampoco están comprendidas dichas palabras en la sección 2 de la Ley, pues no constituyen el relato o informe a que la misma se refiere. Tales palabras sólo exponen la opinión del testigo con respecto a la lealtad del Sr. Arrillaga para con su partido.

En cuanto a este caso (11,994) también erró la corte inferior al no declarar con lugar la excepción perentoria.

██ Consideremos ahora el caso núm. 11,995. En éste se imputó al Dr. Arrillaga Torréns lo siguiente:

"El Dr. Rafael Arrillaga Torréns, escuchen bien, es un traidor indecente, traicionó a su partido por el estómago y claudicó defraudando los ideales de su Partido."

Las palabras en cuestión no imputan un delito público por las razones expuestas al considerar el caso núm. 11,994, pero a nuestro juicio están comprendidas en la sección 2 de la Ley, pues al decir que traicionó a su partido ''por el estómago'', significa en lenguaje vulgar en Puerto Rico que cambió sus ideales políticos por haber recibido una dádiva, lo cual sin duda lo expone al menosprecio público. No erró, pues, la corte, al declarar sin lugar la excepción perentoria en cuanto a este último caso núm. 11,995 y habiéndose probado las alegaciones de la denuncia en este caso, no erró la corte inferior al dictar la sentencia apelada.

*Por las razones expuestas, procede revocar las sentencias apeladas en los casos 11,993, 11,994 y 11,996 y confirmarla en en el caso núm. 11,995.*